23-3612, Western Missouri, Marcia Denmon v. Kansas Counselors, Inc. Mr. Dickinson? Good morning, Your Honors. May it please the Court, my name is Josh Dickinson and I represent the appellant in this case, Kansas Counselors. I reserve two minutes for rebuttal. Your Honors, one section of the Fair Debt Collection Practices Act requires debt collectors to cease communication upon request by a consumer. Another section of the Fair Debt Collection Practices Act requires debt collectors to verify a debt if the validity of the debt is challenged by the consumer. My client, in interpreting those two provisions which it felt were in conflict, determined that it needed to send one letter verifying the debt to the consumer explaining why. Well, the client didn't decide that. I mean, that's not essential, but reality. There's nothing in the record to support who made that decision, but ultimately. Well, let's not just assume what is less likely. I'll pull back what I said and just say, Your Honor, a decision was made. How many cases do you have pending of this kind? We have lots pending, Your Honor. Yeah. Yes. This scenario has come up, not with this client, but. No, no, but they're all at risk. Correct, Your Honor. And ultimately, the client sent one letter and the record reflects that it was received by the plaintiff in U.S. mail. And the letter contained nothing threatening. The letter simply stated Kansas Counselor's position that it believed that the debt was in facto. No further communications occurred in this matter whatsoever. From the receipt of that one letter, the plaintiff has taken the position that they received an injury that meets the standing requirements and invokes the limited jurisdiction of the federal courts. We disagree with that, and we don't believe that any injury can meet the standard that's been set forth by the Supreme Court, starting with Spokue and then moving into TransUnion and the progeny of it. There are two forms of injury that the Supreme Court has said will suffice for standing. You're dealing with Ijaguirre's interpretation of TransUnion. Correct, Your Honor. Which, of course, you authored, Your Honor. And Ijaguirre's case. And the Seventh Circuit in Finnell. I think it's Posseu. I'm not exactly sure how they pronounce it, but yes, the Seventh Circuit has also looked at this issue as well. A number of courts have looked at it. Consistently with the Seventh Circuit case the district court cited. I'm sorry, Your Honor. Finnell is much more recent than the Seventh Circuit case the district court relied on. Correct, Your Honor. It is more recent. And it's contrary. Correct. Yes, Your Honor. So we're looking at a peculiar array of citations by the district court all over the map, except what appears to be more controlling, if not persuasive. Well, and I would take it a step further and say the district court, upon our motion for reconsideration, when we asked them to consider the Bassett decision by the Eighth Circuit, which Judge Kelly was on that panel, the court, the district court, again, we believe incorrectly attempted to distinguish the Bassett holding and the requirements that core elements of the common law analog be analyzed. And the district court ultimately discussed Bassett upon our invitation to do so upon reconsideration, but we believe misinterpreted it. Well, Bassett left open this sort of intrusion upon seclusion tort, right? I mean, I think Bassett did not rule out the possibility that that could be a tort analog. The Bassett panel did not discuss intrusion upon seclusion. There were two common law analogs that were discussed in Bassett. One was for fraud and one was for conversion. Right, but aren't we really talking about the intrusion upon seclusion here? We are. Sort of based on the, you know, kind of skeletal facts that you presented. So I guess my thought is that Bassett doesn't really say, it doesn't really resolve this. It leaves it open for a panel like ours. Judge Kelly, if there were facts 100% on point from the Eighth Circuit, we probably wouldn't be here. So there certainly are some nuances in the facts between this case and the Bassett decision. But here's why Bassett, I think, you know, should. I believe that in order to rule for the plaintiff in this case, there would be a portion of the Bassett decision that would really have to be ignored or somehow overruled. And here's how Bassett's relevant. There were two common law analogs there, fraud and conversion. And the Court rejected the common law analog for fraud because there wasn't reasonable reliance that was set forth in the record. And they rejected, the Court rejected conversion because there was no essentially dominion over, wrongful dominion over property. What I take from the Bassett decision that I think is applicable here is that you have to look at the core elements of a cause of action in order to know whether it's a, quote, close relationship to the common law analog. Right. And so then what you're doing then is zeroing in on each element as opposed to, I think there's another way you could look at that, though. And when you're talking about a similarity, is it, and I think this is the language that they use, is it the kind, right, the kind of harm that is encompassed by this? Because I think the concern, and I hope both parties will address this, is this sort of when do you start getting, once you look at the kind, when does your argument turn into merits, right? Exactly. Into sort of whether or not she can show this claim. And I think that it's easy to slip into that, but I'm not sure it's appropriate to. Well, Judge, first, as we noted in our brief, the Eighth Circuit has not adopted this kind degree sort of rubric in analyzing these cases. It expressly stated it wasn't taking a position. And to my knowledge, I don't believe the court has taken a position. It's a somewhat disputed legal doctrine as to whether that's the appropriate interpretation of Spokio. I try to look at this at a much more basic level, which is the United States Supreme Court chose to use the term close relationship. It didn't have to employ that language. It could have left close out altogether and said any relationship between a common law and law will do. Or it could have used a lesser one like our relationship or any relationship. But we must assume that the Supreme Court chose their language carefully. And they demand a close relationship. Now, that doesn't totally get us there as to how we determine whether something is close or not. But I think as the court did in Bassett, you really need to look at the core elements of a fraud claim. And the element here is the last one that you're arguing? Well, we don't believe that there is an intrusion as that term is understood at the common law. We brief that, and if the court wants to discuss it, we can. But, yes, I think in this context, we'd be primarily relying upon the argument that the receipt of one benign letter in the U.S. mail could not be considered highly offensive by any reasonable person. And that's what was required at common law. Yeah, and I just wonder if that is an example, maybe not the best, but an example of this line drawing between type of or kind of harm and sort of degree. And when do you sort of, you know, I guess to push back a little bit, because I don't know the answer to this, but, you know, are two letters or three letters? Is there some sort of when you start talking about texting and phone calls, well, then you're getting into qualitative or subjective. Like, well, I didn't want six letters, but, you know, but five would have been okay. And this is the line drawing that I don't know how we can do if we don't stick with kind and degree. Well, Judge, certainly there are, as case laws pointed out, there are distinctions between receiving a letter in the U.S. mail, one letter, a benign letter, and texting or telephones when, you know, most folks don't carry their mailbox around with them, but most folks do carry their phone. You get the buzz. You get the call. But then you're talking about multiple. You're saying, yeah.  So then again, you're talking about degree. And even at common, and Judge, I think this is the way you need to, this is the way that I would frame things is that it doesn't have to be actionable at common law. In other words, the plaintiff in this case doesn't have to prove a case of intrusion upon seclusion. But they've got to get close. I mean, I think that's what the Supreme Court is telling us. One letter received in the mail isn't enough. Now, would 100 letters received over a two-week period be enough? Perhaps. That might be enough. But with 50 or 10, and I understand. I'm not expecting a solid answer. But that's where my concern lies, because I don't know where the line is drawn. As is often the case in the law, there are gray areas, and that's why judges have to make those decisions. My point would be is that one is just clearly not close to the type of offensive, odious behavior that the common law required of intrusion upon seclusion. And why did the common law do that? Because, you know, there's intrusions upon our seclusions on a daily basis. We're walking down the street, and somebody's too loud on their phone. Honk of the horn. Telephone rings when we don't want it to. What the common law said is that, look, we're not going to give the right to come into court for every, you know, annoyance that you experience. It's got to be highly offensive. And if you get to something that's highly offensive, breaking into somebody's house, using a telescope to look at them in their bedrooms, those are the types of things that the common law has recognized are actionable. But you don't have to meet that standard in order to have an injury. I don't think the Supreme Court has said that, but you have to get close. And one letter just isn't close. And a number of courts have found that. Now, granted, there are decisions all over the place, as Judge Loken has noted, but the EVA decision, which came out of the Eastern District of Missouri, looked at these exact same facts and said, look, there's just nothing highly offensive about receiving a letter in the mail. And even if it's a letter you don't want, even if it's a letter that you said you don't want, it's not highly offensive to receive that one letter. And so, Judge Kelly, I understand the dilemma of wanting to be able to establish bright lines, but I believe in this case, if you established a bright line of one letter is enough and it's always enough, I really think you're doing disservice to the United States Supreme Court's language when it said it's got to be close. It's got to have a close relationship to what that common law analog is. And these facts just don't present that sort of closeness that I think the Supreme Court has required and that the district court and that the plaintiff are really trying to write out of the analysis, this idea of it being close. Judge, Your Honors, the other issue I wanted to address is that there's also a, in addition to the objective criterion that's required by looking at the common law analog and deciding whether the major elements of it are in place or at least close to being in place, there's also a subjective criterion that the Supreme Court has said, and sort of offhandedly, you know, in the transunion, what's it to you? The Supreme Court has said that the injury in question must affect the plaintiff in a personal and individual way. And I would submit to the court that there is absolutely not one shred of evidence in the record that was before the district court and the record that's come before this court that says how this letter impacted the plaintiff in any way whatsoever. No testimony, no depositions. As the court knows, the disposition of this came on a summary judgment motion with a stipulated record. And within that stipulated record, there was no evidence offered as to how this letter impacted the plaintiff. Was she scared? Was she nervous? Did she not care less? I mean, did she look at it, throw it away, and not think of anything more of it? We don't know because that record is not before the court. Now, the district court oddly said that there was an impact upon her emotionally. But the district court cited to the amended complaint. Of course, that's not evidence. So the district court was erroneous in sort of citing to that. And really, I believe what the district court did and what the plaintiff is asking this court to do is just to assume that a letter would negatively impact the plaintiff when, in fact, there's no evidence before this court as to how this impacted the plaintiff in any way. I'd like to reserve the balance of my time. Thank you. Mr. Phillips? Good morning. May it please the court. Counsel. I'm, as you know, David Phillips. I represent Ms. Denman. So let's take some of the arguments here. You led off talking about Pinnell and Pachillo out of the Seventh Circuit. I handled those cases, so I know the facts. Those cases are not on point, Judge. Both Pachillo and Pinnell, there was no notice to the debt collectors to stop doing what they were doing. There was indirect notice. Actually, in Pachillo, the court found that even the original creditor hadn't received notice to stop doing what it was doing. It was involved trying to collect the debt after a bankruptcy. In Pinnell, the notice went to the original creditor. We were trying to argue it was imputed to the debt buyer who bought it. So there was no stop sign erected. There was no notice. Counsel talks about a benign collection letter. Now, he may be right if they just said, here are some documents showing you all the debt. But that's not the letter here. This letter goes on to say, pay up. Contact has resolved the debt. It's not a benign letter. The confusion is of their own making. There are two different provisions of dispute in the Fair Debt Act. One is under Section 1692G. If you've ever seen any collection letters when you're deciding cases, that's that part that says, you've got 30 days to dispute this debt, any portion thereof. Otherwise, we're going to assume it's valid. That dispute provision is the validation deal that they're talking about. And you only have that right for 30 days after getting it. That goes away. There's a second dispute provision under Section 1692E8 of the Fair Debt Act. And that can be raised at any time. So here's the injury in fact. She erected the stop sign and said, don't contact me under 1692C. She took action to enforce her rights to be left alone. And this court got it right when it cited 1692C as being different. You got it right in both footnotes where you talked about standing. You still have to have concrete injury in fact. And the concrete injury to her is she got the letter, she told him she didn't want. Well, that's not enough. I think it is enough, Judge. I know, okay. I respectfully disagree. I don't see case law, particularly circuit case law, that is in your favor on that. Well, I think the footnotes in the two cases where you guys cited Lupia versus Meda Credit out of 10 circuits certainly support it. You cited this circuit in Bassett in footnote 2, cited Lupia with approval and noted 1692C is different. In the, I'll call it the Rottenberg case because they didn't pronounce the first name, but footnote 4, this court approved Lupia versus Meda Credit, which is directly on point. One is enough. One violation is enough. And I respectfully disagree with counsel that somehow we have to go down the path of showing there is a common law violation here. It is an issue of degree and kind, okay. It's got to be like it. That's what they said in Ramirez. It has to be like something under the common law. But is it like it if it doesn't reach even, I think his position is, and probably disagree, but that one letter isn't even arguably like this offensive nature that the intrusion has to take on. Yeah, no, that's a fair point. But it's who is getting the letter and who did what. When the Fair Credit Act was initially passed in 1978, all the cases were nuanced ambiguities. People would, you know, parse a letter and go, here's an ambiguity. And that's all the stuff that's been wiped out by standing where someone says, I got a letter, I was confused. Okay, there has to be more than just, I got a letter, I was confused. Section 1692C is Congress's intent to say we want to protect people's right to privacy. Okay, Congress is the one who said this is just like the right to privacy. It's in the statute. It's in the congressional findings. One letter is enough. So are you relying on this intrusion? Intrusion upon seclusion being like what 1692C is there to prevent. And so help me understand sort of along the lines of the questions I asked counsel about. His view is, one, it's just like no-brainer. But what if this were 20? Like how do we assess that factor without getting into degree or almost merits? I don't think you should. I think Congress has already erected it. Congress didn't say there was a limit or a dog bite rule that they get to violate at once before it's a violation. Whose rights are being violated here? Okay, under their reading, we get to ignore mail. Does this court really want to say that when jury summonses are sent out, you can ignore it because there was one in the mail? Do we really want to say that when the U.S. government says you owe money for your taxes, you get to ignore it because it was just one letter? Congress specifically said, we don't want people to intrude upon people's seclusion. We want to be able to have them erect a stop sign. Congress didn't say that. Judge, I respectfully disagree. One of the reasons for the Fair Debt Act was to prevent people from having marital strife, having all kinds of problems. You can stop them from collecting by going, don't contact me anymore. Legislative history includes conference report talks about this tort, common law tort. It doesn't talk about common law tort, but it talks about the reason why they're letting people have this stop sign that they can put up. And it's an important stop sign. It doesn't prevent collection. I just looked at footnote four in Ojigwa, which you miscited, because, yes, it referenced lupia, but it said there's a lot of cases on both. Some things violate and some things don't. It's very specific. And I think this is. On this point. And I think on this point. On the point that Judge Kelly is talking about. And I think on this point it's right on point, Judge. No, no. Specifically it said, don't contact me, and they did contact her. And they didn't just send validation. Where's the subjective injury? I thought, let me go back. You just said this was a debt collector lawyer because it said pay up. I thought the pay up came in 2017. And this exchange was in 2021. And they said pay up again. Well. But that's after she said, don't contact me about it. It allowed the debt collector to keep marking her credit. It allowed the debt collector to sue her. I think this is very much like a benefit. The benefit to the debtor that is referenced in Ojigwa. I don't see how a benefit to the debtor. Providing the documents that would clarify or help the debtor understand whether the refusal to pay is justified and legitimate. That helps the debtor. That eliminates this kind of litigation. The debtor didn't have to have the debt clarified. The debtor did not ask to have the debt clarified. This does not help the debtor. This is not like the garnishments. If they had mailed the documents to you, then everything would be fine. Well, I didn't represent the debtor. All right. Whoever did. The debtor didn't say they had an attorney. The debtor wrote this letter with the help of an attorney, which is perfectly appropriate. Steckland versus Rapp. Come on. And just said, go away. The attorney wrote the letter. I said that. They helped him write the letter. Yeah, it wasn't help. And said, go away. Okay. Go away means go away. Judge Sacks, you know. Yeah, I don't want to pay. I don't want to pay, which stops this form of collection. One form of collection. It allows them to keep marking the credit. In certain states, if the debt collector has an assignment, they can file suit directly. Or they can send it to an attorney if they're serious to have it sued upon. It prevents one form of communication. And Congress said it was important to prevent that form of communication. Give people peace of mind. Establish their privacy again. And make the debtors put up or shut up. So, I respectfully disagree with you, Judge. This is not a helpful letter. If it had just said, here's documents. You might have it a point. Defendant would have a point. We probably wouldn't be here for this. But it wasn't just, here's documents. It's, hey, we're going to start collecting again. We're going to start bothering again. That's anything but, okay, we're going away. They indicate they're not going away. Any other further questions, Judge, on specific points? Thank you. Rebuttal. Thank you, Your Honor. Just to make sure the record is clear, I'd invite the panel to look at the letter itself. Counsel just represented that the letter said that we are going to, quote, start bothering you again. Nowhere in that letter does it say that there would be any further communications. And, in fact, the record is clear that no further communications occurred. So I would ask the court to look carefully at the letter. Counsel wants this case to be about whether there's a violation of the FDCPA. And as Judge Loken pointed out, that's not what the decision that's pending before this court is. It's whether there's an injury as set forth by a United States Supreme Court precedent. Counsel said that Congress has stated that this is a violation, if you send one of these letters after being requested not to do so. What counsel is leaving out is that, essentially, the United States Supreme Court overruled that. Overruled may not be the right word, but basically said whether it's a violation of the law or not, Congress cannot change federal court jurisdiction by enacting statutes such as this when there's no injury. There has to be an injury in federal court in order for there to be standing in jurisdiction. So whether Congress wants this to be a violation or not is beside the point. What the court has to determine is, consistent with the United States Supreme Court precedent, is there a common law analog here? And again, I will harken back to my point that the word close has to have some meaning. It's not a happenstance word. It has to have some level of meaning here. And what we would submit to the court is that this is one of those cases, as the United States Supreme Court pointed out in TransUnion, that's one of those bare procedural violations where, essentially, the plaintiff is seeking to enforce the law, not to obtain any sort of redress for an actual injury that she experienced. Thank you, Your Honors. Thank you, Counsel. The case has been well briefed and argued, and we'll take it under advisement.